UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MARK RANAGHAN,

<em>Plaintiff</em>,

– against –

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

<em>Defendant</em>.

---

**MEMORANDUM & ORDER**
24-cv-03538 (NCM)

**NATASHA C. MERLE**, United States District Judge:

Plaintiff Mark Ranaghan brings this action against defendant Commissioner of the Social Security Administration ("Commissioner") seeking judicial review of the Commissioner's decision denying plaintiff's application for disability insurance benefits. *See* Compl. ¶¶ 1, 4, ECF No. 1. Before the Court is plaintiff's motion for judgment on the pleadings ("Mot."), ECF No. 11-1, and the Commissioner's cross-motion for judgment on the pleadings ("Cross-Mot."), ECF No. 14-1. For the reasons stated below, plaintiff's motion is **DENIED** and the Commissioner's cross-motion is **GRANTED**.

<strong>BACKGROUND</strong>

Plaintiff applied for disability insurance benefits on April 8, 2021, alleging a disability onset date of October 1, 2020. Certified Administrative Record ("R.") 10, ECF No. 6.[1] The basis for plaintiff's application was back and neck pain, as well as nerve and

---

[1]    Throughout this Opinion, page numbers for the Certified Administrative Record ("R.") refer to the numbers found in the bottom right corner of each page, rather than the

knee damage. *See* R. 93, 106. The Commissioner denied plaintiff's application on July 2, 2021, and again on February 17, 2022, after reconsideration. *See* R. 10. Plaintiff requested a hearing, which was held telephonically on January 23, 2023 ("Hearing"), before an Administrative Law Judge ("ALJ"). *See* R. 10.

The record that was before the ALJ included notes and reports from nine doctors. *See generally* Joint Stipulation of Relevant Facts ("Joint Stip."), ECF No. 15. Three doctors in particular supplied opinions relevant to the parties' current dispute: Dr. Atoynatan, M.D, and state agency medical consultants Dr. C. Li, M.D. and Dr. U. Ng, M.D. *See* R. 22–24.

Dr. Atoynatan evaluated plaintiff on May 27, 2021, during a "consultative medical examination" as part of plaintiff's disability application. *See* Joint Stip. 9. Dr. Atoynatan observed that plaintiff had a very slow gait, could not walk on his heels and toes, and could not walk without his cane. Joint Stip. 9–10. Dr. Atoynatan further observed that plaintiff could rise from a chair with "difficulty," but that plaintiff otherwise had "full strength in his upper and lower extremities and no sensory deficits." Joint Stip. 10. X-rays of plaintiff's left knee were normal, however, x-rays of plaintiff's lower back "showed moderate degenerative changes." Joint Stip. 10. Based on these observations, Dr. Atoynatan opined that plaintiff's cane was medically necessary, and that plaintiff had "marked limitation in bending, heavy lifting, prolonged standing, prolonged sitting, and prolonged walking," due to his back and knee problems. *See* Joint Stip. 10.

Approximately one month later, Dr. Li, a state agency medical consultant, issued an administrative finding which concluded that plaintiff suffered from a severe medically

---

page numbers assigned by the Electronic Case Filing system ("ECF"). All other page numbers for docket filings refer to the page numbers assigned by ECF.

determinable impairment, R. 97, but that plaintiff nevertheless could perform light work, *see* R. 102. Dr. Li's conclusions were based on the evidence in plaintiff's file, including reports and records from plaintiff's visits to physical therapists, orthopedic offices, and hospitals. *See* R. 93–95. Based on these records, Dr. Li opined that while plaintiff's impairments "could have reasonabl[y] been expected to produce some alleged symptoms," plaintiff's "statement[s] concerning the intensity, persistence and limiting effects" of his impairments were "generally not consistent with evidence on file." R. 98. Similarly, on February 16, 2022—on reconsideration of the first denial of plaintiff's disability application—Dr. Ng, another state agency medical consultant, issued an administrative finding concluding that plaintiff could perform light work. *See* R. 118. Based on the record evidence in plaintiff's file, Dr. Ng concluded that plaintiff's condition "result[ed] in some limitations" in plaintiff's abilty to perform work, but that plaintiff's condition was "not severe enough to keep [him] from working." R. 119.

At the Hearing, while represented by counsel, plaintiff testified that he injured his neck and lower back at work in June 2005, but returned to work for an extended period of time. *See* R. 76. Plaintiff further testified that in 2021, he fell in front of his apartment, which he attributed to his 2005 injury. R. 76–77. Additionally, plaintiff testified that he had numbness and tingling in his legs daily, his knees popped in and out daily without a brace, he had weakness in his arms as well as tremors and shakes, and he fell four times in the previous year. R. 78, 80–81. He also testified that he had nerve damage in his neck and feet. R. 79–80. Plaintiff explained that he could stand up for approximately two minutes with a cane, sit five minutes before needing to get up, and that he could walk one block while using a cane and holding on to his wife. R. 77–78. Plaintiff testified that he could not lift any weight, and that he could not do a desk job because he could not sit. R.

78, 82. Plaintiff testified that his wife helped him put on his socks and sneakers, guided him in the shower, and stayed with him until he got out, and that she did the shopping, food preparation, and household chores. R. 81–82.

An impartial vocational expert ("VE"), Amy Vercillo, also testified at the Hearing. R. 86–89. The VE testified that a hypothetical individual who had the same vocational profile as the plaintiff—i.e., age, education, and job history—could perform certain light and unskilled work. *See* R. 86–87. The VE further testified that a hypothetical individual who was limited to work at the sedentary exertional level, who could only occasionally climb, balance, stoop, kneel, crouch and crawl, and who needed to use a cane to ambulate, could still perform certain jobs in the national economy, for instance, a shipping checker or billing clerk. *See* R. 87–88.

After the Hearing, the record was held open for the submission of additional treatment records, which were admitted into evidence, and by letter dated June 6, 2023, plaintiff's counsel stated that the record was complete. R. 10. On August 21, 2023, the ALJ issued a written opinion finding that plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from October 1, 2020, through the date of th[e] decision." R. 25–26. Plaintiff requested review of the ALJ's decision by the Social Security Administration Appeals Council, which declined review. R. 1–6. Plaintiff filed this appeal of the Commissioner's decision in May 2024. *See generally* Compl. Plaintiff moved for judgment on the pleadings pursuant to Rule 12(c); the Commissioner filed a cross-motion for the same relief. *See* Mot.; Cross-Mot.

## STANDARD OF REVIEW

A district court reviewing a final decision of the Commissioner is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

4

or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[2] 42 U.S.C. § 405(g); *see also* Fed. R. Civ. P. 12(c) (allowing courts to enter a judgment on the pleadings). Nonetheless, federal judicial review is "limited." *Rubin v. Martin O'Malley, Comm'r of Soc. Sec.*, 116 F.4th 145, 154 (2d Cir. 2024). Reviewing courts "do not substitute" their own "judgment for the agency's" or review the record de novo. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). Instead, "[w]e conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Rubin*, 116 F.4th at 154.

In conducting this review, courts must determine (1) "whether the correct legal standards were applied," and (2) "whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005); *see also Rucker v. Kijakazi*, 48 F.4th 86, 90–91 (2d Cir. 2002). Whether the record contains "substantial evidence" depends on whether "a reasonable mind might accept" the evidence "as adequate to support" the ALJ's determination. *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019); *see id.* at 102 (explaining that "[t]he phrase substantial evidence is a term of art used throughout administrative law to describe how courts are to review agency factfinding"). The "threshold for such evidentiary sufficiency is not high"; it requires only that the record contain "more than a mere scintilla" of evidence. *Id.* at 103. The court must uphold the Commissioner's conclusion so long as it is supported by a "rational interpretation" of the evidence. *Rubin*,

---

[2]    Throughout this Opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

116 F.4th at 155. However, courts must still "examine contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.*

"Before determining whether the Commissioner's final decision is supported by substantial evidence[,] the court must first be satisfied that the ALJ completely developed the administrative record." *Kelly v. Comm'r of Soc. Sec.*, No. 20-cv-05318, 2024 WL 5120051, at *9 (E.D.N.Y. Dec. 16, 2024). The ALJ has a "well-established" obligation to investigate and develop the record, even where a claimant is counseled—this "has been described as a bedrock principle of Social Security law." *Id.* An ALJ can take steps to further develop the record by, inter alia, "re-contacting the treating physician, requesting additional records, arranging for a consultative examination, or seeking information from others." *Bryant v. Comm'r of Soc. Sec.*, No. 20-cv-06933, 2022 WL 17540581, at *13 (S.D.N.Y. Nov. 21, 2022), *report and recommendation adopted*, 2022 WL 17540540, at *1 (Dec. 6, 2022) (citing 20 C.F.R. §§ 404.1520b, 416.920b). Where the presiding ALJ did not apply the correct legal standard or sufficiently develop the record, a court may remand the case for further proceedings. *See Sczepanski v. Saul*, 946 F.3d 152, 161–62 (2d Cir. 2020); *Daniels v. Kijakazi*, 617 F. Supp. 3d 180, 195 (S.D.N.Y. 2022).

## DISCUSSION

### I.    Statutory and Regulatory Disability Benefit Requirements

The Social Security Administration administers social security disability insurance benefits to eligible applicants pursuant to the Social Security Act ("SSA"). *See generally* 42 U.S.C. § 301 et. seq. To secure benefits, an applicant must demonstrate, among other things, that he is disabled. For purposes of social security disability insurance benefits, disability is defined as an impairment or combination of impairments that renders an individual unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The Commissioner, acting through a presiding ALJ, assesses whether an applicant's impairments or combination of impairments meets the statutory definition of disability by undertaking a "five-step sequential evaluation process." 20 C.F.R. § 404.1520(a)(4). The Commissioner only advances to the next step of the evaluation process where the determination of an applicant's disability status cannot be made at that stage. *Id.*

The first step in this process is to evaluate the applicant's current work activity; a disability determination will be denied where an applicant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At the second step, the Commissioner "considers the medical severity of the claimant's impairment or combined impairments." *Rubin*, 116 F.4th at 147 (citing 20 C.F.R. § 404.1520(a)(4)(ii)). At the third step, the Commissioner considers whether the applicant's impairment "meets or equals" one of the listings in Appendix 1 of Part 404, Subpart P ("Listed Impairment"). 20 C.F.R. § 404.1520(a)(4)(iii). If the applicant's impairments do not meet or equal a Listed Impairment, the Commissioner determines the claimant's residual functional capacity ("RFC"), which is the claimant's ability to function in a workplace despite medical limitations "based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). The Commissioner then moves to step four and assesses whether the claimant can perform past relevant work when considering the claimant's RFC. 20 C.F.R. § 404.1520(a)(4)(iv).

If the claimant cannot perform his past relevant work, the fifth and final step is to consider whether an applicant, given his RFC, age, education, and work experience, can

perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). The claimant "bears the burden of proof in the first four steps of the sequential inquiry[.]" *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). However, at step five, "the burden shifts, to a limited extent, to the Commissioner to show that other work exists in significant numbers in the national economy that the claimant can do." *Rubin*, 116 F.4th at 148.

## II.    The ALJ's Determination

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 1, 2020, the alleged disability onset date. R. 13. At step two, the ALJ found that plaintiff had the following severe impairments: obesity, degenerative disc disease of the lumbar spine, degenerative disc disease and herniated discs of the cervical spine with nerve root impingement, degenerative disc disease and herniated discs of the thoracic spine, and lumbar radiculopathy. R. 13. The ALJ found that plaintiff's other physical impairments were non-severe. R. 13–14. At step three, the ALJ found that plaintiff's combination of impairments did not meet or medically equal the severity of one of the listings in Appendix 1 of Part 404, Subpart P, 20 C.F.R. §. 404.1520(a)(4)(iii). R. 14–15.

Then, after considering all the evidence in the record, the ALJ determined that plaintiff retained the RFC to perform light work[3] except he could only occasionally climb,

---

[3]    The SSA defines "light work" as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §404.1567(b).

balance, stoop, kneel, crouch, or crawl. *See* R. 15–24. Specifically, the ALJ concluded that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 16.

At step four, the ALJ found that plaintiff could not perform his past relevant work as a residential rehabilitation aide. R. 24. At step five, after considering plaintiff's vocational profile and RFC, the ALJ determined that plaintiff could perform other work existing in significant numbers in the national economy, including representative occupations such as a labeler, small products assembler, or small product packer/sorter. R. 24–25. Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the SSA from October 1, 2020, through the date of the decision. R. 25.

### III.    The Court's Analysis of the ALJ's Determination

Plaintiff appeals the ALJ's decision on the basis that it was not supported by substantial evidence and that the ALJ did not properly apply the relevant legal standards. *See* Mot. 9. Specifically, plaintiff argues that the ALJ erred in formulating plaintiff's RFC because (1) the ALJ improperly weighed the medical opinion evidence, specifically by giving controlling weight to the opinions of the state's medical consultants; and (2) the ALJ improperly considered plaintiff's conservative treatment plan and medical records indicating improved or mild symptoms. *See* Mot. 12–15. Consequently, plaintiff suggests that by relying on an RFC determination unsupported by substantial evidence, the ALJ's determination at step five of the evaluation that plaintiff could make an adjustment to other light work was incorrect. *See* Mot. 15. Separately, plaintiff argues that the ALJ's decision was "marred" because the ALJ failed to include plaintiff's need for a cane in

developing the testimony of the VE. *See* Mot. 15. In response, the Commissioner contends that the ALJ's decision was supported by substantial evidence and free of legal error. *See* Cross-Mot. 9–15. For the reasons stated below, the Court finds that the ALJ properly developed the record, and that the determination of plaintiff's RFC is supported by substantial evidence and consistent with appropriate legal standards, and thus remand is not warranted.

Here, the questions are whether (1) the ALJ failed to properly develop the record; and (2) whether the ALJ's RFC determination was supported by substantial evidence.

### A.  The ALJ Properly Developed the Record

"[T]he ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). This duty "arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination[.]" *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (citing 20 C.F.R. § 404.1512(d)–(f)). Although this duty is heightened when a claimant proceeds pro se, it "exists even when, as here, the claimant is represented by counsel." *Id.* While it is true that the affirmative duty to expand the record does not extend ad infinitum, reasonable efforts must be made to seek out further information where evidentiary gaps exist, or where the evidence is inconsistent or contradictory. *Cadet v. Colvin*, 121 F. Supp. 3d 317, 320 (W.D.N.Y. 2015).

Plaintiff argues that the ALJ's decision was "marred" because, when developing the VE's testimony, the ALJ "did not include the need to use a cane for ambulation," which Dr. Atoynatan had deemed medically necessary for plaintiff to walk. *See* Mot. 15. This argument is without merit.

To begin, the ALJ did in fact consider plaintiff's need for a cane in connection with the VE's testimony. Specifically, the ALJ asked the VE to describe whether a hypothetical individual with the same vocational profile as plaintiff could perform jobs in the national economy, assuming that individual would be limited to work at a light exertional level and could only occasionally climb, balance, stoop, knee, crouch, and crawl. R. 86–87. The VE opined that the individual could perform certain light and unskilled work, including, for example: (1) labeler (Dictionary of Occupational Titles ("DOT"): 920.687-126, Specific Vocational Preparation ("SVP") 2); (2) small parts assembler (DOT: 706.684-022, SVP 2); and (3) small products packer and sorter (DOT: 222.687-022, SVP 2). R. 86–87.

After the VE answered, the ALJ asked whether a second hypothetical individual with the same limitations as the first could perform jobs in the national economy, except that the second hypothetical individual would be limited to work at the sedentary exertional level "and they would have the additional limitation of needing to use a cane to ambulate." R. 87. The VE testified that use of a cane would have an impact on some sedentary occupations, but not all, and that there are many sedentary occupations that most times are seated, thereby not requiring an accommodation. R. 87–88. The VE opined that sedentary occupations where the person would be seated throughout the day and could be performed using a cane included, for example: (1) shipping checker (DOT: 209.587-010, SVP 2); (2) billing clerk and billing checker (DOT: 205.367-014, SVP 2); and (3) electronics component inspector (DOT: 726.684-110, SVP 2). R. 87–88.

Moreover, contrary to plaintiff's argument, the ALJ considered Dr. Atoynatan's assessment of plaintiff's need for a cane. *See, e.g.*, R. 14 ("Dr. Atoynatan, a consultative examiner, assessed that the claimant's use [of] a cane is medically necessary."). But although Dr. Atoynatan assessed plaintiff's use of a cane was medically necessary,

evidence from other medical experts concluded otherwise. For instance, the ALJ cited Dr. Zamegar's—plaintiff's treating neurologist—observation that plaintiff's gait was steady and without ataxia. R. 14. The ALJ also noted that when evaluating plaintiff for "status post fall and leg weakness," Dr. Lee, one of plaintiff's primary care providers, found plaintiff's strength was 5/5 in upper and lower extremities except 4/5 in his left lower extremity with knee flexion, and that plaintiff's gait was normal. R. 14; *see Maria A. R. v. Kijakazi,* No. 21-cv-00290, 2022 WL 2954376, at *8 (N.D.N.Y. July 26, 2022) (finding that although plaintiff presented using a cane on occasions, examinations did not reveal objective or other findings to suggest that she required a cane to ambulate, and plaintiff's gait showed to be the same both with and without a cane).

Thus, the ALJ did not fail to develop the record in light of the second hypothetical presented to the VE, as well as the ALJ's consideration of conflicting medical evidence demonstrating that the cane may not have been medically necessary.

### B. The ALJ's RFC Determination was Supported by Substantial Evidence

Plaintiff further argues that the ALJ erred by formulating an RFC assessment unsupported by substantial evidence. *See* Mot. 12–15. After an ALJ completes step three of the evaluation, he must assess a claimant's RFC. *See* 20 C.F.R. § 404.1520(a)(4). The RFC assessment is used at the fourth and fifth steps of the evaluation process to determine whether a claimant can perform their past relevant work or if they can adjust to other work, respectively. 20 C.F.R. § 404.1520(e). Plaintiff does not take issue with the ALJ's determination at step four that plaintiff could not perform his past relevant work as a residential rehabilitation aide. *See* Mot. 7. However, plaintiff contests the ALJ's conclusion that plaintiff had the RFC to "perform light work," and therefore disputes the

ALJ's conclusion at step five that plaintiff could engage in employment in certain unskilled light occupations. *See* Mot. 7.

An RFC assessment evaluates a claimant's ability to function in a workplace despite medical limitations "based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). The RFC determination describes "the most [a claimant] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1). "In making the RFC determination, the ALJ is entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole." *Porteus v. O'Malley*, No. 23-969, 2024 WL 2180203, at *2 (2d Cir. May 15, 2024) (summary order). Accordingly, "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). "In the end, the ALJ's findings need only afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence." *Porteus*, 2024 WL 2180203, at *2.

Here, the ALJ concluded that, after careful consideration of the entire record, plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he could only occasionally climb, balance, stoop, kneel, crouch, or crawl. R. 15. The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the objective medical evidence and the record as a whole." R. 16. The ALJ based his RFC decision on plaintiff's Hearing testimony, the medical opinion evidence, plaintiff's conservative course of treatment, and the diagnostic tests of record. *See* R. 24.

Plaintiff asserts that the RFC assessment was deficient for two principal reasons: (1) the ALJ improperly weighed medical opinions in the record because he should have relied on the opinions of the Commissioner's consultive medical examiner, Dr. Atoynatan, instead of the opinions of the state agency medical consultants who reviewed plaintiff's medical records, Drs. Li and Ng, *see* Mot. 12–13; and (2) the ALJ improperly considered plaintiff's conservative treatment regimen and "various treatment records indicating improved or mild symptoms" when determining plaintiff's RFC, Mot. 14. Neither argument has merit.

### i. The ALJ Properly Weighed the Medical Opinions

In evaluating medical opinions, the ALJ must consider, among other factors: supportability, consistency, the author's relationship with the claimant, and the author's specialization. *See* 20 C.F.R. § 404.1520c(c)(1)–(5). The "most important" factors are supportability and consistency. *Rubin*, 116 F.4th at 148. Supportability of a medical opinion considers "how well a medical source supported and explained their opinion." *Daniels*, 617 F. Supp. 3d at 189. An ALJ considers the consistency of a medical opinion through "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record[.]" *Id.* The ALJ must "explain how he considered supportability and consistency as applied to each medical source's opinion in his determination or decision" and may not "give any specific evidentiary weight" to any particular opinion by default. *Rubin*, 116 F.4th at 148. Although an "explanation need not be exhaustive," the Court must be able to "glean the rationale of an ALJ's decision." *Chance v. Comm'r of Soc. Sec.*, No. 18-cv-06043, 2019 WL 2123565, at *6 (W.D.N.Y. May 15, 2019). An ALJ's "failure to properly consider and apply the requisite factors is grounds for remand." *Russ v. Comm'r of Soc. Sec.*, 582 F. Supp. 3d 151, 161 (S.D.N.Y. 2022).

14

Similarly, if an ALJ "bases [his] explanation upon a misreading of the record, remand is required." *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-cv-04630, 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted*, 2021 WL 134945, at *1 (Jan. 14, 2021).

Contrary to plaintiff's contention, the ALJ did not improperly give controlling weight to the opinions of Drs. Li and Ng in disregard of other medical evidence in the record. Rather, the ALJ "separately evaluated the persuasiveness of each medical opinion, as required by section 404.1520c." *Parent v. O'Malley*, No. 23-917, 2024 WL 3342463, at *1 (2d Cir. July 9, 2024) (summary order). Indeed, in compliance with 20 C.F.R. § 404.1520c(a)–(c), "the ALJ addressed each opinion in turn," explaining why he found, or did not find, "each opinion to be supported by the record and consistent with the other evidence." *Rushford v. Kijakazi*, No. 23-317, 2023 WL 8946622, at *2 (2d Cir. Dec. 28, 2023) (summary order).

For example, the ALJ considered Dr. Atoynatan's opinion that plaintiff possessed limitations in bending, heavy lifting, prolonged standing, prolonged sitting, and prolonged walking due to his lower back problems that were aggravated by his knee problem. Joint Stip. 10 (citing R. 551–52). Dr. Atoynatan also opined that plaintiff had moderate limitation pushing and pulling due to his neck problems. Joint Stip. 10 (citing R. 552). Dr. Atoynatan assessed that plaintiff's cane was medically necessary and that he could not walk without it. Joint Stip. 10 (citing R. 550). However, while the ALJ found that Dr. Atoynatan's opinions were "supported by a detailed report containing his clinical findings on physical examination," R. 23, i.e., supportability, the ALJ nevertheless explained that Dr. Atoynatan's findings on plaintiff's physical limitations were

15

"inconsistent with the record as a whole, including the opinions of Dr. Li and Dr. Ng." R. 23.

The ALJ cited Dr. Li's prior administrative medical finding which concluded that plaintiff's abnormality of a major joint in an extremity was a severe medically determinable impairment, however, plaintiff could still perform light range of work. R. 23. Dr. Li also found that plaintiff could occasionally climb ramps, stairs, ladders, ropes or scaffolds, as well as balance, stoop, kneel, crouch and crawl. R. 23. Additionally, as to Dr. Ng, the ALJ noted that Dr. Ng concluded, on the reconsideration level, that the plaintiff's abnormality of a major joint in any extremity and disorders of the skeletal spine were medically determinable impairments. R. 23. However, Dr. Ng similarly opined that plaintiff could perform light range of work. R. 23. Dr. Ng also found that plaintiff could occasionally climb ramps and stairs, climb ladders, ropes or scaffolds, balance, stoop, kneel, crouch and crawl. R. 24. The ALJ found Dr. Ng's administrative medical finding was supported by the doctor's review of the record and detailed rationale, and further found that his opinion was consistent with the record, including Dr. Li's prior administrative medical finding. R. 24.

Plaintiff argues that the ALJ improperly afforded Drs. Li and Ng's opinions weight over the opinion of Dr. Atoynatan because the ALJ's analysis of "the opinions of the State Agency consultants [was] a hodgepodge of confusion." Mot. 13. Specifically, plaintiff argues that there was no rationale in crediting the opinions of Drs. Li and Ng because (1) "there is no suggestion in the record" that Dr. Ng is in fact a doctor, Mot. 13; (2) there was

no indication of Drs. Li and Ng's specialty, Mot. 13; and (3) Dr. Li did not personally examine plaintiff, Mot. 13. These arguments are unpersuasive.[4]

First, according to the Commissioner's regulations, medical consultants, such as Dr. Ng, must be licensed physicians. *See* 20 C.F.R. § 416.1016(b). Indeed, the record indicates that Dr. Ng, M.D., a doctor of medicine, is a licensed physician. Joint Stip 12; *see also* R. 120. Second, record evidence does in fact demonstrate Drs. Li and Ng's specialty: internal medicine. R. 101, 104, 117, 120.[5] Third, "[i]t is permissible for an ALJ to credit the findings of a non-treating source such as a state agency reviewing doctor if the ALJ credibly concludes that the reviewing doctor's opinions are more consistent with the record." *Kimberly A.D. v. Comm'r of Soc. Sec.*, No. 22-cv-01103, 2024 WL 1142012, at *13 (N.D.N.Y. Mar. 15, 2024).

The ALJ credibly concluded that Drs. Li and Ng's opinions were more consistent with the record. Indeed, the ALJ observed that plaintiff's own doctors assessed that the severity and persistence of plaintiff's alleged symptoms were inconsistent with objective diagnostic imaging. *See* R. 19. The ALJ pointed out that plaintiff's providers were unable

---

[4]    Though the ALJ's opinion reads that he found Dr. Li's administrative medical finding "unpersuasive," this appears to be, as Commissioner notes, a typographical error given the ALJ's finding that Li's "prior administrative medical finding [wa]s supported by a review of the record, as it stood at that time, as well as a detailed rationale . . . [and] [] consistent with the record as a whole, including Dr. Ng's administrative medical finding." R. 23; *see also* Cross-Mot. 12. Such typographical errors that do not prejudice plaintiff are not grounds for remand. *Heitz v. Comm'r of Soc. Sec.*, 201 F. Supp. 3d 413, 424–25 (S.D.N.Y. 2016) (holding that ALJ's typographical error did not warrant remand where although there were inconsistencies in the ALJ's opinion, the opinion as a whole showed that the error was typographical and not substantive).

[5]    *See also* Social Security Program Operations Manual System (POMS), DI 24501.004, https://secure.ssa.gov/apps10/poms.nsf/links/0424501004 (last visited Aug. 11, 2025) (explaining that code 19 corresponds with an internal medicine specialty code for Social Security disability programs).

to understand why his reported symptoms were so severe, yet diagnostic imaging did not correlate. For example, Dr. Zamegar noted that plaintiff's EMG results showing radiculopathy did not correlate with plaintiff's history or examination findings. Joint Stip. 10 (citing R. 569). The ALJ cited Dr. Zamegar's observation that although plaintiff used a cane, he had a steady gait and no ataxia. R. 19. The ALJ also noted Dr. Zamegar's assessment that plaintiff showed good burst of strength upon testing of hip flexion and dorsi-plantar flexion, and Dr. Zamegar indicated that plaintiff's upper extremity strength was 5/5 and that he had no tremors. R. 19. As such, the ALJ emphasized that Dr. Zamegar reported that the source of plaintiff's weakness was unclear and lumbar radiculopathy seemed an unlikely explanation. R. 19–20; Joint Stip. 10–11 (citing R. 569).

Consistent with Dr. Zamegar, Dr. Buza, plaintiff's orthopedic surgeon, reiterated that plaintiff did not appear to have significant central or foraminal stenosis in his lower back and did not have any central stenosis in his neck and upper back. Joint Stip. 11 (citing R. 805). The ALJ emphasized Dr. Buza's note that he was "unsure as to why [p]laintiff fell frequently and had lower extremity weakness." R. 20; Joint Stip. 11 (citing R. 805). The ALJ noted that Dr. Buza reassured plaintiff that he did not have a bone out of place or abnormal bone growth. R. 21. The ALJ also noted Dr. Lee's observation that plaintiff had chronic subjective lower extremity weakness, but that his previous EMG was unremarkable and that his orthopedic surgeon did not recommend surgical intervention. R. 21. Dr. Lee also observed that despite plaintiff experiencing some pain with weight bearing, he was able to walk. Joint Stip. 12 (citing R. 982). The ALJ cited Dr. Lee's note that plaintiff's June 2021 EMG showed no evidence of polyneuropathy, lumbosacral radiculopathy, or myopathy. R. 22. Finally, the ALJ noted that upon their evaluation of

plaintiff, Dr. Yeung—plaintiff's internal medicine physician—found that plaintiff's physical exam was "intact." R. 21.

Thus, Drs. Zamegar, Buza, Lee and Yeung's findings affirmed Drs. Li and Ng's conclusions that while plaintiff certainly has medically determinable impairments, his statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and the record as a whole. These six doctors' opinions were especially persuasive given that the opinions were consistent with one another and consistent with other objective medical evidence in the record. Thus, the ALJ's finding that the state agency medical consultants' opinions were more persuasive than that of the examining consultant, Dr. Atoynatan, was not improper.[6] *See Parent*, 2024 WL 3342463, at \*1–2 (the ALJ did not act improperly when finding the opinions of non-examining consultants more persuasive than examining consultants).

Moreover, as courts in this circuit have "repeatedly emphasized, it is up to the agency, and not th[e] court, to weigh the conflicting evidence in the record." *Villier on behalf of N.D.D.R. v. Comm'r of Soc. Sec.*, No. 23-cv-00893, 2024 WL 2174236, at \*3 (2d Cir. May 15, 2024) (summary order). Therefore, the ALJ complied with 20 C.F.R. §

---

[6]    Plaintiff's argument that the ALJ should not have relied on Dr. Li's opinions because Dr. Li did not have or consider plaintiff's relevant medical records in light of Dr. Li's reference to an "MRI showing herniated disc" (singular) rather than "discs" (plural), is unavailling. Mot. 11. For one, Dr. Li's reference to the MRI showing a "herniating disc and bulging disk" is a recount of the findings in Dr. Atoynatan's May 27, 2021 medical examination, the same doctor whose findings plaintiff implores should be creditted. *See* R. 548 (describing plaintff's "MRI that showed herniated and bulging disk"). And in any event, although SSA regulations require that a consultant be given "necessary background information about a claimant's condition," these regulations do "not amount to a requirement that every consulting physician be provided with all of a claimant's medical records and history (much less a requirement that the physician report that [he or] she viewed every, or any, document in the record)." *Johnson v. Colvin*, No. 13-cv-03745, 2015 WL 6738900, at \*15 (E.D.N.Y. Nov. 4, 2015), *aff'd sub nom.*, *Johnson v. Comm'r of Soc. Sec.*, 669 F. App'x 580 (2d Cir. 2016) (summary order).

404.1520c by evaluating the supportability and consistency of the medical opinions in the record, and did not err by finding unpersuasive Dr. Atoynatan's opinion and crediting the opinions of Drs. Li and Ng. *See McGonagle v. Kijakazi*, No. 22-637, 2022 WL 17724696, at *1 (2d Cir. Dec. 16, 2022) (summary order) (explaining that it was not "an error for the ALJ to conclude[]" that parts of the Commissioner's own examining consultant's opinions "were inconsistent with treatment records[,]" nor was "it unreasonable for the ALJ to find that the medical assessments" made by non-examining consultants "were more persuasive"); *see also Sutton v. Comm'r of Soc. Sec.*, No. 23-cv-01392, 2024 WL 2882630, at *3 (E.D.N.Y. June 6, 2024) ("In this instance, the ALJ reasonably determined that based on the entirety of the record, including [the] [p]laintiff's own hearing testimony, [plaintiff's treating physician's] opinion overstates the extent of the [plaintiff's] exertional limitations for standing, sitting and walking."); *accord Cage*, 692 F.3d at 122 ("[W]e defer to the Commissioner's resolution of conflicting evidence.").

### ii. The ALJ Properly Considered Plaintiff's Treatment Regimen & Improved Symptoms

Plaintiff's contention that the ALJ improperly considered plaintiff's conservative treatment regimen and treatment records "indicating improved or mild symptoms" in his RFC determination is similarly misplaced. *See* Mot. 14. The ALJ reasoned that plaintiff's decision to opt for physical therapy in lieu of more aggressive treatments, such as surgery, R. 13, weighed against plaintiff's allegations as to the severity of his impairments. *See* R. 13–14, 18. The fact of a conservative course of treatment to support a conclusion that a claimant is not disabled must be accompanied by other substantial evidence in the record, such as the opinions of other examining physicians and objective findings. *Davila v. Comm'r of Soc. Sec.*, No. 16-cv-04774, 2018 WL 5017748, at *19 (E.D.N.Y. Oct. 16, 2018)

(citing *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008))[7]; *see also Dowling v. Berryhill*, No. 16-cv-04784, 2018 WL 472817, at *9 (E.D.N.Y. Jan. 18, 2018) (finding that the plaintiff's conservative treatment regimen indicated that she was not as restricted as she asserted).

The record reveals precisely that form of corroborating evidence here. For example, the ALJ noted that while plaintiff reported difficulty walking, right knee pain, and muscle weakness, plaintiff also informed medical professionals that he was not taking pain or muscle spasm medication. R. 18. Additionally, none of plaintiff's doctors recommended surgical intervention, supporting the ALJ's determination that with physical therapy and medication, plaintiff could perform light work. *See* R. 15–21. And as explained above, plaintiff's own doctors could not discern a reason why plaintiff's reported symptoms were so severe in light of contradictory diagostic imaging. *See* R. 16. Finally, the ALJ's RFC evaluation is further strengthened by his finding, based on the record evidence, that plaintiff was independent in certain of his activities of daily living,

---

[7]     Plaintiff's reliance on *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008), for the proposition that "[t]he opinions of a treating physician are not discounted merely because he has recommended a conservative treatment regimen," Mot. 14, is inapposite. For one, the ALJ did not discount the findings of plaintiff's treating physician—Dr. Nafiz Karim—at all. Indeed, the ALJ expressly relied on Dr. Karim's recommendation that plaintiff "undergo physical therapy and use a brace" to treat his conditions, R. 13, in reaching his conclusion that plaintiff's impairments "were managed conservatively and no aggressive treatments were recommended or anticipated for these conditions." R. 13–14. Moreover, while a conservative treatment regimen is not dispositive as to the determination of a claimant's RFC, it "is a relevant factor that an ALJ may consider in making his RFC determination." *Dolan v. Berryhill*, No. 17-cv-04202, 2018 WL 4658804, at *17 (S.D.N.Y. July 24, 2018), *report and recommendation adopted*, 2018 WL 3991496, at *3 (Aug. 21, 2018).

including tasks such as paying bills, feeding himself, and certain personal care tasks. R. 24; *see also* Joint Stip. 1–2; R. 320–25.[8]

Moreover, it is well established that an ALJ may rely on medical records showing that a claimant's symptoms improved with treatment. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (summary order); *see also Cassandra G. v. Comm'r of Soc. Sec.*, 626 F. Supp. 3d 553, 571 (N.D.N.Y. 2022) ("The ALJ is entitled to rely on a plaintiff's improvement in her symptoms when determining a plaintiff's RFC."); *Burgard v. Berryhill*, No. 15-cv-00296, 2017 WL 6379237, at *5 (W.D.N.Y. Dec. 14, 2017) (concluding that substantial evidence supported an increase in the plaintiff's RFC where the ALJ relied on medical records demonstrating that the plaintiff's surgery was successful "and that he experienced improvement" in his knee pain). To the extent that plaintiff disputes the ALJ's RFC determination because he believes that the "occasional amelioration" of his symptoms did not "impl[y] a capacity for work," *see* Mot. 14, "it is the ALJ's responsibility to choose between properly submitted medical opinions and other competent evidence to piece together an overall RFC assessment." *Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 185 (N.D.N.Y. 2019).

In sum, upon review of the record in this case, the Court finds that the ALJ properly weighed the medical opinion evidence, in addition with the other record evidence, and

---

[8]    Plaintiff's assertion that "ALJs are not free to impose their notions that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered," is misplaced. Mot. 14 (citing *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)). The ALJ's findings as to the severity of plaintiff's impairments were based not only on plaintiff's conservative treatment regimen, but also the fact that "claimant's doctors seem[ed] unconvinced or unable to understand why claimant's symptoms are so severe and the diagnostic imaging does not correlate." R. 16. Moreover, as explained *supra*, the ALJ did not "discount the medical opinion of [plaintiff's] treating physician." *See Shaw*, 221 F.3d at 134; Mot. 14. On the contrary, the ALJ expressly relied on plaintiff's treating physician's findings in reaching his conclusions. *See* R. 13.

that the ALJ properly considered plaintiff's conservative treatment regimen and medical records indicating improving symptoms. Therefore, the Court finds no error in the ALJ's RFC decision.

Accordingly, the ALJ's finding that plaintiff was capable of performing light work with certain limitations was supported by substantial evidence, and plaintiff's motion for judgment on the pleadings must be denied.

## CONCLUSION

For the reasons stated above, plaintiff's motion is **DENIED** and the Commissioner's cross-motion is **GRANTED**. The Clerk of Court is respectfully directed to enter judgment and to close the case.

**SO ORDERED.**


_/s/ Natasha C. Merle_
NATASHA C. MERLE
United States District Judge


Dated:      August 22, 2025
            Brooklyn, New York